UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

HONORABLE MICHAEL W. FITZGERALD, U.S. DISTRICT JUDGE

AZURE FUNDS, LLC et al.,            )
                                    )
            Plaintiffs,             )
                                    )
                vs.                 )
                                    )   2:20-CV-5696-MWF
FAR EASTERN AIR TRANSPORT           )
CORPORATION,                        )
                                    )
            Defendant.              )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Los Angeles, California

Monday, September 28, 2020

_____

AMY DIAZ, RPR, CRR, FCRR
Federal Official Reporter
350 West 1st Street, #4455
Los Angeles, CA 90012

*Please order court transcripts here:  www.amydiazfedreporter.com*

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

APPEARANCES OF COUNSEL:

For the Plaintiffs:

            GLANCY PRONGAY & MURRAY LLP
            By:  Charles Linehan, Attorney at Law
            1925 Century Park East Suite 2100
            Los Angeles, California 90067

            THE ROSEN LAW FIRM PA
            By:  Philip Kim, Attorney at Law
            275 Madison Avenue 40th Floor
            New York, New York 10016

            POMERANTZ LLP
            By:  Alexander Hood, Attorney at Law
            1100 Glendon Avenue, 15th Floor
            Los Angeles, California 90024

For Defendant:

            SKADDEN ARPS SLATE MEAGHER & FLOM LLP
            By:  Zachary Faigen, Attorney at Law
            300 South Grand Avenue, Suite 3400
            Los Angeles, California 90071

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

THE CLERK:  Calling item number 3, case number CV-20-5696-MWF, In re Cheetah Mobile, Inc. Securities Litigation.

Counsel, please state your appearance for the record.

MR. KIM: Good morning, Your Honor.  Phillip Kim, Rosen Law Firm, for lead plaintiff movants Mao and Yu.

MR. LINEHAN: Good morning, Your Honor.  Charles Linehan from Glancy Prongay & Murray on behalf of movants Azure and Shang.

MR. HOOD: Good morning, Your Honor.  This is Alexander Hood from Pomerantz LLP on behalf of lead plaintiff movants --

THE COURT:  I'm sorry, counsel, you sort of faded out.  Would you please repeat your appearance?

MR. HOOD: Certainly.  Alexander Hood, Pomerantz LLP on behalf of lead plaintiff movants Mao and Yu.

MR. FAIGEN: Good morning, Your Honor.  This is Zach Faigen from Skadden Arps on behalf of Defendant Cheetah Mobile.

THE COURT:  Good morning, counsel.

You know, what we really need here is a way to break a tie in a way that the law regards as appropriate and wouldn't strike your clients as shocking.  I can't pick a name out of a hat.  I can't just -- but you know, these firms

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

are great firms.  You are great lawyers.  The clients have putatively been harmed in similar amounts and similar ways.

So it seems to me what the case law indicates is the real tiebreaker is one particular metric, and as close as those -- these plaintiffs are in regard to that metric, like I said, it's better than me throwing darts at a board or picking names out of a hat.

So with that, let me hear from counsel for Azure and Shang in regard to the motion.

MR. LINEHAN: Good morning, Your Honor.  This is Charles Linehan.

So you are, you know, correct.  And I think it's right to point out that the courts in this circuit typically look at these four *Lax-Olsten* factors. Here is a situation where my clients win on the first three factors, and Yu and Mao win on the last factor.

Now, it's a very rare circumstance where that happens.  But in every case where a movant has won on the first three but lost on the last, the Court has held that the movant that won on the first three has the largest financial interest.  And I can provide citations to those cases if you would like, but they are also provided in our briefing.

Now, there are other cases where a movant wins on two and another movant wins on two, and in those cases the court will say, well, the last act or loss is going to be the

tiebreaker factor.  And for example, that happened in *Richardson v. TVIA*, which is cited in both parties' briefings.

But there has been no case, and counsel for Yu and Mao have not provided any case, in which the movant that won on the first three factors was deemed to have a lesser financial interest than the movant that won only on the last factor.

So for those reasons, I think the right call here is to say that Azur and Shang have the largest financial interest, and that because that -- so they are presumptively the most adequate plaintiff, the presumption has not been rebutted, so they should be appointed as lead plaintiff.

THE COURT:  All right.  Let me hear from counsel for Mao and Yu.

What -- do you agree with that reading of the case law or do you think that that is incorrect?  Is it in fact that it's only a tiebreaker that is two and two and not if it's three and one?

So what is -- what is your view of the -- and the case law, I mean, this is obviously it's -- unless I missed something, we aren't talking about the Ninth Circuit laying down a black letter rule that would make the whole thing easy.

I mean, I'm certainly going to be guided by what

other district judges have done, but at some point that is not binding on me.  It has to -- it has to make sense.  You know, to the extent that it reflects a clear consensus of what the law is, of course it's going to carry weight.

But let me hear, then, from counsel for Mao and Yu in regard to what the existing case law says.

MR. KIM: Yes, Your Honor.  This is Phillip Kim.

As to the first point that every case, whether it's three to one, you know, the first three factors versus the loss factor, the Courts will side with the three factors other than loss, that is incorrect.

I mean, the cases that were cited by the competing movant are all cases that are outside the Ninth Circuit, and cases that provided special circumstances, right?

You know, the *TransDigm* case and *General Motors* hold for the proposition that each factor should be weighted equally, and you just basically run through those factors, which I don't think there is any Ninth Circuit or District Court cases in the Ninth Circuit that hold for that proposition.  So those two are outlier cases.

And then you have three Southern District cases that are cited, the *Rao*, *Suntopia* and *SafeNet*.  And those were cases where there were complexities that are not present here, right?  You had one case where there were five different class periods, and, you know, different loss

methodologies were provided to the Court.

And in that instance, you know, the Court looked toward other factors.  You know, *Suntopia* was a case where there was a $30,000 difference.  It's cited for the proposition, well, the Court, you know, appointed a different lead plaintiff because there was a $30,000 difference.  But that decision actually talks about one movant in a group of movants.  And ultimately, the Court appointed a group of institutions over that.  So our position is that doesn't really hold for that proposition.

And *SafeNet* there was a $40,000 difference, but in that case you had a situation where the Court appointed the movant with the smaller loss because it found that, you know, one of the movants had sold all their shares before the corrected disclosure.

So there are no cases that have been cited where you have, you know, facts that you have here where it's just the one-disclosure case where the Court has disregarded loss in favor of the other three factors.

And you know, the other point is, is I would say that it's not three to one.  It's basically two, a tie, and one.  So you know if you look at net funds expended, the delta between what we expended and what the competing movant expended is only $805.  It's not even a percentage point.

So one could say that is a wash.  So then you look

at net shares versus loss, both numbers are pretty close, but we are -- we have the greater loss. And, you know, if you look at the *Ying Li* case, that was a case -- actually, that was a case I was involved in -- where you had greater losses, um, overcame net shares and net funds.

So, you know, that was a situation where a District Court, the Central District, had found that loss is really the big tiebreaker. And if you look at the *Richardson* case, that is a Northern District of California case, again, that is a case where the Court looked at the four factors, and used loss to outweigh net shares and net funds expended.

And I focus on *Richardson* because, you know, in the reply, the competing movant argued for the first time, well, net shares, you know, is most important, right? It's an argument that was raised for the first time.

And in *Richardson*, there the net shares, the net funds expended, were less but the loss was greater, and the court appointed the shareholder that had the less net shares and net funds expended but the greater loss.

So I think the weight of the case law is that when you have a situation where one movant has the greater loss, that is determinative.

And, you know, though the Ninth Circuit does not have case law on this, there is no black letter rule. What the Ninth Circuit said in *Cavanaugh* is that whatever

accounting methodologies are used, they should be consistently applied and rational.

And what is consistently applied in courts in the Ninth Circuit is they look to loss, and that is it. You know, if the losses are the same, then you look to these other factors, and that is the state of the case law.

And, you know, I think reflective of that is that if you look at the competing movant's own papers, in their opening papers, you know, really it's just loss that is presented.

And then in opposition, the argument is, is, well, we have three of the four *Lax-Olsten* factors, so we should be appointed. And then in reply the argument is, well, you know what, we've got the most net shares and net funds and that is the most important factor, we should be appointed.

So even within the briefing, what has been asked of the Court is inconsistent, but what is consistent in the case law is that the courts look to loss, and whoever has the biggest loss, they ring the bell, and they are appointed lead plaintiff. And that is really what the majority of the courts across the country do.

You know, unless the Court has any questions, I'll mute myself.

THE COURT: Thank you.

Mr. Linehan?

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

MR. LINEHAN: Your Honor, Mao and Yu state in their reply memorandum at page 4 that, "Courts overwhelmingly assess financial interest for purposes of the lead determination pursuant to the PSLRA with reference to the four *Olsten-Lax* factors."  The *Lax* factors are what apply. It's what most courts apply.  If the loss factor were determinative, then that is not a factor test.

That is why I think even the case law that this court cites in the tentative opinion says that, you know, I think the courts have used -- the strongest language they used is something like most determinative but not absolutely determinative.

Because if you are going to have a factor test, and even if you want to weigh one factor more than others, it's only a factor test if, you know, the first three go one way and one goes the other way, that factor test would dictate that the movant that won three of the four would win.

Otherwise, you know, if loss is outcome determinative, then there is no reason to have a factor test. Which you would have some kind of other test where you look at loss.  And then if that is too close or not clear or something like that, then you default to a different test which looks at the other factors.  But that is not what the courts have done.  That is not what the case law states.

You know, and again, I want to emphasize that even

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER

though these are out-of-district opinions, out-of-circuit opinions, every court that has dealt with a situation where gross shares purchased, net shares purchased and net expenditure went for one and life of loss went to the other, that court has ruled that because it's a factor test and those three factors went the way of the one movant, that movant has the larger financial interest.

THE COURT:  Well, the District Court opinion isn't binding on me whether it's in the Ninth Circuit or out.  If there -- and in part, it depends on the reasoning.

If there were -- if other district judges in the Ninth Circuit consistently ruled a certain way based on their consistent interpretation of Ninth Circuit law, then of course that has much more weight than would be simply their best efforts on trying to deal with a complex situation.  In which case, you know, the views of any judges, whether they are in the nine Ninth Circuit, whether they are in the Southern District of New York regardless, would be potentially of some persuasive value here.

Mr. Faigen, I take it you don't have a lot to add here, if anything?

MR. FAIGEN: That's correct, Your Honor.  We are not taking a position here.

THE COURT:  All right, counsel.  I'm obviously just going to have to go back in and delve even more deeply in the

cases that I have.  And, you know, like I said, I'm really just looking for a sensible way to break a tie, which is more consistent in being in a court of law than using whoever -- to using the alphabet, or whoever was born first, or any other number of things that could be used outside of a lawsuit but can't very well be used in a lawsuit.

So I will do that and I will get a final order out to you shortly.

Thank you, counsel.

*****     *****     *****

I certify that the foregoing is a correct transcript from the record of proceedings in the above-titled matter.

---------------------------

Amy C. Diaz, RPR, CRR                    December 10, 2020

S/  Amy Diaz

AMY C. DIAZ, RPR, CRR OFFICIAL COURT REPORTER